# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

PATRICK SHACKELFORD and
PATRICK KIRKMAN,

    Defendants.

CRIMINAL CASE NO.
1:21-cr-00454-WMR-RGV

## ORDER

This matter is before the Court on the Magistrate Judge's Order and Report and Recommendation ("R&R") [Docs. 209, 221], which recommends that Defendant Patrick Kirkman's Motion for Relief from the Government's Violations [Doc. 178] be denied. Kirkman filed Objections to the R&R. [Doc. 225]. After due consideration, the Court adopts the R&R.

## I.    Factual Background

### i.  Allegations in Indictment

The Indictment [Doc. 1] alleges that Patrick Shackelford and Kirkman smuggled cell phones, marijuana, methamphetamine, and other controlled substances into the United States Penitentiary in Atlanta, Georgia (the "Prison"). [*Id.* ¶ 9]. At the time, Shackelford was a Correctional Officer serving as a plumbing supervisor at the Prison, overseeing inmates who performed plumbing services. [*Id.*

¶ 3]. He leveraged this position to facilitate the alleged misconduct with inmates, including Kirkman, Mitchell Arms (a former co-defendant), and two other inmates who provided identifications, Individual-1 and Individual-2 (the "Witnesses"). [*Id.* ¶¶ 5–9].

The contraband entered the Prison through a hole—created by Shackelford and various inmates—in the wall between a ward used for suicide watch (W-ward) and the visitor's bathroom. [*Id.* ¶ 10]. Shackelford would escort the Witnesses to pick up the contraband weekly, and the contraband would be stored in the ceiling above Shackelford's office. [*Id.* at ¶¶ 10, 12]. Then, the contraband would be passed to Kirkman and Arms, who would distribute it to other inmates in the prison. [*Id.*]. In exchange for his help, Shackelford received pain pills and approximately $5,000, largely paid by Kirkman. [*Id.* ¶ 14–15].

A federal grand jury returned an indictment charging Shackelford and Kirkman with one count of conspiracy to commit bribery (Count One), in violation of 18 U.S.C. § 371; Shackelford and Kirkman with one count of conspiracy to provide and obtain and possess prohibited objects (Count Two), in violation of 18 U.S.C. § 371; Shackelford with one count of bribery (Count Three), in violation of 18 U.S.C. § 201(b)(2)(A); Shackelford with three counts of providing prohibited objects (Counts Four through Six), in violation of 18 U.S.C. §§ 1791(a)(1), 1791(b)(1), (3)–(4), 1791(d)(1)(B)–(C), (F); Kirkman with two counts of possessing,

obtaining, and attempting to obtain prohibited objects (Counts Seven and Eight), in violation of 18 U.S.C. §§ 1791(a)(2), 1791(b)(1), (3), 1791(d)(1)(B)–(C); and Shackelford and Kirkman with one count of drug conspiracy (Count Nine), in violation of 21 U.S.C. § 846. [Doc. 1].

### ii. Alleged Discovery Violations

#### a. Protective Order

Kirkman first alleges that his receipt of discovery was delayed by seventeen (17) months because of the Government's delay in providing a protective order. When the Government first turned over discovery materials to Kirkman's counsel in January 2022, it asked his counsel "not to copy, share, disseminate, or otherwise make available discovery to your client,[ ]Kirkman, prior to the parties finalizing a Protective Order." [Doc. 178 at 5]. Kirkman's counsel then asked the Government to provide a proposed Protective Order between January and November 2022. [Doc. 178 at 5–10]. And, while Assistant United States Attorney Alex Sistla repeatedly assured Kirkman's counsel that the Protective Order was forthcoming, those promises proved to be empty. [Doc. 178 at 6–8 (detailing the Government's assurances from February 2022 through November 2022)].

The Government asserts that by April 2022, the Government clarified to Kirkman's counsel that a substantial amount of the discovery could go to Kirkman, but "asked that certain interviews/reports be redacted of identifying information and

that the transcripts/reports for Individual-1 and -2 be redacted . . . ." [Doc. 189 at 7]. Kirkman's counsel responded that this proposal was unworkable because the discovery was too voluminous to redact and again asked for a proposed Protective order. [Doc. 178 at 8–9]. The Government only reiterated that its concern was not providing Kirkman the vast majority of discovery, only the unredacted interviews and reports of inmates. [Doc. 189 at 8].

So, by December 2022, Kirkman brought the Government's failure to the Court's attention when requesting an extension of time to file pretrial motions.[1] [Doc. 76]. The Magistrate Judge addressed Kirkman's concern at a pretrial conference on December 6, 2022, and Sistla represented to the Court that he could get "something over to [Kirkman's counsel] by December 13" and present "something to the Court no later than the end of [the] next week." [Doc. 107 at 3–4]. But, December came and went with no protective order.

---

[1] The motion stated as follows:

> Nearly a year ago, the Government furnished discovery material with the understanding that it would be subject to a protective order that the Government was in the process of finalizing. In anticipation of an expeditious crafting of the proposed order by the Government, defense counsel agreed not make the physical discovery material available to Defendant, Patrick Kirkman, prior to the parties' finalizing the Order. We have made numerous inquiries regarding the proposed Order, and the Government has assured us that it will be forthcoming, but we have not yet received the protective order or released the discovery materials to Defendant. [Doc. 76 at 1–2]

Then, in January 2023, Kirkman filed another motion for extension of time, again complaining that he was awaiting the proposed order. [Doc. 89 at 2]. The Magistrate Judge addressed the proposed order at a status conference in February 2023, where Sistla admitted that the protective order had not been provided, but stated that the Government was comfortable with Kirkman receiving the discovery materials so long as his counsel "simply redacted out Individual 1 and Individual 2's names . . . ." [Doc. 108 at 12]. Kirkman's counsel responded that it wasn't "simple" to redact the names from 10,000 pages of discovery when it was unclear what the Government even wanted redacted. [*Id.* at 12–13]. Sistla acknowledged Kirkman's counsel's concerns and told the Court that the Government would provide the redacted discovery on a rolling basis and confirmed that the redactions could be completed within thirty days of the hearing. [*Id.* at 13–15]. Later in the hearing, counsel for co-defendant Arms reported that Arms was already in receipt of unredacted discovery materials. [*Id.* at 33]. After hearing that the discovery had already been produced to a co-defendant, Sistla promised the Court that he would review the unredacted discovery over the weekend and would let Kirkman's counsel know how he would like to proceed "next week right away." [*Id.* at 34].

By March 3, 2023, Kirkman notified the Court of Sistla's failure. [Doc. 178 at 13; Doc. 97]. The Court held a hearing on March 7. [Doc. 109]. Kirkman's counsel argued that the protective order was unnecessary at that point because the

Defendants already knew the identities of the Individuals the Government sought to protect. [*Id.* at 61]. The Court ordered the Government to file a motion for protective order by the end of the day. [*Id.* at 63–64]. Sistla complied and finally filed its motion that day, seeking to prohibit Kirkman's counsel from providing the unredacted discovery in order to protect the identities of inmates who had agreed to be interviewed by law enforcement. [*Id.*]. The Court ultimately denied the motion as moot because the unredacted discovery was already in the hands of another defendant. [Doc. 111].

> ### b. *Physical Evidence*

Kirkman complains that the Government failed to allow his counsel to examine physical evidence. In February 2022, Kirkman's counsel requested to review "all of the physical evidence in this case." [Doc. 178 at 21]. The Government responded that it would provide available dates to inspect the physical evidence, but no dates were provided. [*Id.*]. Kirkman's counsel asked again in March, April, July, September, October, and November that same year. [*Id.* at 21–23]. But, despite the Government's repeated promises to arrange the review, it still was not scheduled. [*Id.*].

In December 2022, Kirkman alerted the Court to the Government's repeated failure to arrange a review. [Doc. 76]. The Magistrate Judge addressed this issue at the pretrial conference, where Sistla responded that he could not "think of any

specific physical items that they have in mind" to review. [Doc. 107 at 5–6]. Kirkman's counsel clarified that she wanted to review all of the physical evidence in the case, and Sistla agreed to schedule a viewing by the end of January 2023. [*Id.* at 7–9]. But, January came and went without anything being scheduled. [Doc. 89 at 1–2]. The Magistrate Judge again addressed this issue in February 2023. [Doc. 108]. After which, a limited viewing occurred in March 2023. [*Id.* at 16–19; Doc. 178 at 26].

### c. *Crime Scene Visit*

In February 2022, Kirkman's counsel first requested to view the Prison, where all of the allegations in the indictment took place. [Doc. 178 at 28]. The Government said that they would provide available dates, but failed to do so. [*Id.*]. Kirkman's counsel again requested to arrange a site visit in March, April, July, September, October, and November 2022. [*Id.* at 29–30]. And, although Sistla reassured Kirkman's counsel each time that he would provide dates, he never did. [*Id.*].

By December 2022, Kirkman notified the Court of the Government's delay. [Doc. 76]. The Court also addressed this issue at the pretrial conference and directed Sistla to coordinate with the Defendants to schedule site visit the next week. [Doc. 107 at 4–5]. The visit occurred later in December 2022, and counsel was able to view all relevant areas, "including the W-Ward, visitor's bathroom, the maintenance shop

(i.e., where the plumbing department was located), and Housing Unit-B." [Doc. 189 at 11; Doc. 178 at 32].

### d. Discovery Production

Kirkman alleges that the Government initially only provided "a portion of the discovery" in January 2022. [Doc. 178 at 34]. Counsel requested the alleged missing discovery in April, May, and July 2022. [*Id.*]. After not receiving the requested discovery, Kirkman notified the Court in August and December 2022. [Doc. 62]. The Court ordered the Government to confer with counsel by December 16, but the Government failed to do so. So, counsel again requested the discovery in January and February 2023. [Doc. 178 at 37]. The Government then produced some of the requested discovery. [*Id.* at 38]. After a status conference with the Court, counsel again notified the Government of outstanding discovery in March 2023. [*Id.* at 39]. By April 2023, the Government finally provided the photos used during the witness identifications and provided the transcripts requested by June 2023. [*Id.* at 40–42]. The Government provided more discovery that was previously in its possession in September. [*Id.* at 43]. The only outstanding discovery Kirkman can point to is an interview of a witness in November 2023. [*Id.* at 44–45].

## II.    Legal Standard

When reviewing objections to a magistrate judge's recommendation, this Court makes a "de novo determination of those portions of the report or specified

proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009) (citations omitted). If no specific objections are made or no objections are made at all, "the appropriate standard of review for the report and recommendation is clear error." *Lattimore v. Bank of Am., N.A.*, 2014 WL 11456272, at *1 (N.D. Ga. Feb. 10, 2014), *aff'd sub nom. Lattimore v. Bank of Am. Home Loans*, 591 F. App'x 693 (11th Cir. 2015). Because Kirkman filed timely objections to the R&R in this case, the Court reviews the challenged portions of the R&R's recommendations de novo and the remainder of the R&R for clear error.

Federal Rule of Criminal Procedure 16 requires the government, upon a defendant's request, to allow a defendant to inspect any papers, documents, other tangible objects, buildings, or places in the government's possession or control. Fed. R. Crim. P. 16(a)(1)(E). Rule 16 applies to evidence that is (1) material to preparing a defense; (2) intended to be used in the government's case-in-chief; or (3) obtained from or belongs to the defendant. *Id.* The government has a continuing obligation to disclose newly discovered evidence subject to Rule 16 discovery. Fed. R. Crim. P. 16(c).

District Courts may remedy Rule 16 violations by (1) ordering a party to permit inspection as prescribed by the court; (2) granting a continuance; (3) prohibiting a party from introducing undisclosed evidence; and (4) entering "any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2). Factors for deciding whether to impose a sanction include the reasons for the delay in complying with a discovery order, whether there was bad faith by the prosecution, prejudice to the defendant, availability of a means to cure the prejudice. *United States v. Turner*, 871 F.2d 1574, 1580 (11th Cir. 1989). Generally, a district court should impose only "the least severe sanction necessary to ensure prompt compliance with its discovery orders." *Id.* The Eleventh Circuit has held suppression of evidence is not the least severe method of ensuring compliance with discovery orders and works against the fair administration of justice. *United States v. White*, 846 F.2d 678, 692 (11th Cir. 1988). Courts may dismiss indictments for Rule 16 violations, however such a dismissal is an "extreme sanction which should be infrequently utilized." *Id.* at 693. Whether to impose sanctions is in the district court's discretion. *United States v. Chestang*, 849 F.2d 528, 533 (11th Cir. 1988).

## III.  DISCUSSION

   *a. The Court finds Assistant United States Attorney Alex Sistla's conduct unacceptable.*

Although the Court ultimately adopts the R&R and declines to impose Kirkman's requested sanctions, the Court wishes to express deep disappointment in the Government's fulfillment of its obligations. The Supreme Court has emphasized the higher standard of behavior federal prosecutors should be held to:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.

*Berger v. United States*, 295 U.S. 78, 88 (1935); *see also* Model Rules of Pro. Conduct, r. 3.8 (Am. Bar Ass'n 2024) ("A prosecutor has the responsibility of a minister of justice and not simply that of an advocate . . . ."). Mr. Sistla fell decidedly short of the lofty standard set for federal prosecutors. Mr. Sistla delayed Kirkman's uninhibited review of discovery for more than a year through his failure to provide a three-page protective order, which he repeatedly promised to Kirkman's counsel. He similarly delayed production of physical evidence and defense counsel's access to the federal prison for around a year, and inadvertently failed to disclose various items of discovery. Regardless that this conduct does not justify the sanctions requested by Kirkman, the Court admonishes the Government to avoid such conduct in the future.

### b. The Court will not consider ex parte evidence of prejudice.

Prior to issuance of the current R&R, Kirkman, through his counsel, participated in two ex parte hearings meant to provide evidence of prejudice caused by the Government's delays. [Doc. 209 at 108–109]. On September 20, 2024, this Court ordered Kirkman to file briefing within seven days reflecting whether he intended to use ex parte materials to support his request for sanctions. [Doc. 253]. The Court indicated an unwillingness to consider the ex parte evidence without allowing the government an opportunity to review and respond to that evidence. [*Id.*]. To date, Kirkman has not filed a response to the Court's Order. Therefore, the Court continues to consider the R&R without regard to Kirkman's ex parte proffers.

### c. The Government's delay in providing a promised protective order does not warrant the drastic sanctions requested by Kirkman.

Reduced to the essentials, the Magistrate made two conclusions to justify the recommendation that this Court not issue sanctions for the Government's failure to provide an agreed upon protective order. First, the Magistrate reasoned that the lack of a protective order prevented Kirkman's review of only a "small subset" of discovery, and Kirkman's counsel remained free to review the discovery with Kirkman, even if Kirkman could not personally retain the discovery. [Doc. 209 at 29]. This led the Magistrate to find Kirkman had not shown a violation of Rule 16. [*Id.* at 30]. Second, the Magistrate concluded Kirkman had not shown the Government's delays caused him any prejudice. [*Id.*].

Kirkman objects to the Magistrate's conclusions, arguing the Magistrate's analysis was both legally and factually erroneous. As a legal matter, Kirkman says the Magistrate erred by concluding defense counsel's review of discovery with a defendant satisfies Rule 16's production requirements. [Doc. 225 at 15]. Kirkman emphasizes the need for Kirkman to personally retain and review discovery. [*Id.* at 15–17]. As a factual matter, Kirkman says (1) the Government's conduct cannot be attributed to mere negligence; (2) the Government's claimed interest in protecting inmate witnesses is "specious"; and (3) the withheld discovery was all of discovery rather than a "small subset" of discovery. Upon consideration, the Court acknowledges Kirkman's frustration, but declines to order the drastic relief requested.

The Court needn't decide whether blocking a criminal defendant's ability to physically possess discovery violates Rule 16. Neither party cites binding authority interpreting Rule 16's requirement that a defendant be allowed to "inspect and to copy" discoverable evidence.[2] Fed. R. Crim. P. 16(a)(1)(E). Even if Kirkman's inability to physically possess discovery violates Rule 16, the violation's severity and any prejudice is mitigated by defense counsel's ability to review the produced

---

[2] The government at least cites a series of district court cases that would suggest it is not a violation of a defendant's constitutional right to limit his ability to retain discovery while in pretrial detention. *See United States v. Wolter*, No. 1:19-cr-48, 2022 U.S. Dist. LEXIS 190287, at **7–8 (D.N.D. Oct. 18, 2022) (collecting cases to support conclusion that "these principles do not mandate Defendant's possession of all discovery materials in pretrial detention").

discovery with Kirkman. While defense counsel may have faced some difficulties in redacting the discovery or summarizing the discovery to Kirkman, it is relevant that by April 2022, counsel knew that the sole concern was the identity of two inmate witnesses. Therefore, counsel was not entirely without the ability to review the discovery themselves and request some feedback from Kirkman. Assuming a Rule 16 violation occurred when the Government failed to provide a protective order, and therefore hindered Kirkman's access to discovery, the Court can turn to the factors for determining whether to impose sanctions.

First, the Government acknowledges its conduct was negligent, and it offers no substantive excuse for preventing unfettered access to discovery. [Doc 242 at 13]. The Magistrate and this Court has already admonished the Prosecutor for his conduct. The bulk of the analysis turns on whether the Government acted in bad faith, whether Kirkman suffered prejudiced, and what would be the proper remedy for any prejudice.

Second, Kirkman relies heavily on the allegation the Government delayed production of the protective order in bad faith, rather than out of mere negligence. Kirkman cites several cases holding a pattern of willful misconduct warrants harsher sanctions. *See Taylor v. Ilinois*, 484 U.S. 400. 416–17 (1988) (finding "willful and blatant" discovery violation warranted "severest sanction" of excluding witness from testifying); *United States v. Euceda-Hernandez*, 768 F.2d 1307, 1313 (11th Cir.

1985). The citation to *Euceda-Hernandez* is puzzling. There, the defendant had made statements to a law enforcement officer, but the prosecution failed to disclose that statement to the defense until three days prior to the start of trial. *Id.* at 1311. The Eleventh Circuit faulted the trial court for not weighing the relevant factors for sanctions, since the "presence of a clear violation of a discovery order does not excuse a trial judge from weighing the factors[ ]and imposing the least severe, but effective, sanction." *Id.* at 1312. The Eleventh Circuit concluded that the prosecution's error had not been made intentionally, and that a continuance or recess could remedy any prejudice. *Id.* The Court noted that suppression of evidence is done "at the expense of sacrificing the fair administration of justice and the accurate determination of guilt and innocence." *Id.*

Like *Euceda-Hernandez*, Kirkman has done little to show that Mr. Sistla acted in bad faith to gain a tactical advantage in this case. The Government did not delay disclosure until the eve of trial, but instead provided Kirkman's counsel a voluminous amount of discovery in January 2022. While the Government delayed a promised protective order for many months, the Court declines to find this conduct as anything more than negligence. Kirkman and his counsel share their rightful indignation, but do little to show an intent by Mr. Sistla to prejudice Kirkman. Kirkman argues evidence of bad faith will never be explicit, but that the Court should infer bad faith from Mr. Sistla's course of conduct. [Doc. 225 at 41]. Mr. Sistla has

appeared before this Court on many occasions, and the Court has little reason to doubt that he is a well-meaning, honest public servant—albeit one who was in this case lackadaisical in providing discovery and scheduling important matters with Kirkman's counsel.

Third, the Court finds no evidence of prejudice to Kirkman. Kirkman requested a number of extensions of time to file pretrial motions throughout 2022, and he did not raise the Government's failure to provide a protective order until December 5, 2022. [Doc. 76]. Since the Magistrate denied the protective order as moot On March 22, 2023, Kirkman has had unimpeded access to discovery materials. Kirkman has had an ample amount of time to review the materials, confer with counsel, and prepare his defense.

Finally, the Court finds Kirkman has not requested the least severe method to remedy the prejudice, if any, that he suffered due to the Government's delay. In *Euceda-Hernandez*, the Eleventh Circuit expressed a clear disfavor towards drastic sanctions such as suppression of evidence or dismissal of an indictment. The typical remedy for delay in producing discovery or exculpatory evidence would be a continuance or recess to allow the defendant an opportunity to review the evidence and prepare a defense. The Court needn't fashion such relief, however, because

Kirkman has now possessed discovery delayed by the late protective order for over a year.[3]

Ultimately, the Court utilizes its discretion and declines to grant the drastic relief of suppressing evidence or dismissing the indictment.

>    d. *The Government's delay in allowing Kirkman to inspect the physical evidence does not warrant sanctions.*

Much of the analysis in the previous section applies to the Government's delay in allowing Kirkman to inspect available physical evidence and leads the Court to conclude sanctions remain unwarranted. Kirkman's claims of prejudice still fall flat since Kirkman's counsel filed several motions for extension of time to file pretrial motions, but did not raise the Government's failure to schedule a time for viewing the physical evidence until December 2022. [Doc. 209 at 31]. The Magistrate took steps to prevent Kirkman from being forced to litigate his case without a full understanding of the evidence by providing Kirkman fourteen days from review of the physical evidence to file pretrial motions. [Doc. 107 at 7–8]. Kirkman has now reviewed the evidence and may prepare his defense accordingly. Even if there were prejudice, Kirkman continues to seek the disfavored remedy of suppression of the evidence or dismissal of the indictment. Once again, the Court declines to grant the requested sanctions.

---

[3] The absence of prejudice and inappropriateness of dismissal remains true regardless of whether the protective order would have applied to a small subset of discovery or all of discovery.

> *e.  The Government's delay in scheduling defense counsel's visit to the Prison does not warrant sanctions.*

The Magistrate concluded the Government's delay in arranging a site visit to the Prison was not due to the Government's bad faith and did not cause prejudice to Kirkman. [Doc. 209 at 47]. Kirkman does little to object to this conclusion besides arguing that the Magistrate should not have required Kirkman to demonstrate the Government's bad faith. [Doc. 225 at 40]. Kirkman further argues the Government's earlier access to the crime scene gave the Government a "tactical advantage" and "significant changes were made to the crime scene, and evidence was eradicated, during the very period when the Government was delaying defense counsel's access." [*Id.* at 39–40].

Kirkman does not adequately allege how renovations within the Prison, which occurred during the Government's delay, prejudiced Kirkman. Critically, no significant changes appear to have been made to the areas most important to the events alleged in the indictment. As a reminder, the indictment alleges drugs were smuggled through a hole in the visitors' bathroom into an area between the bathroom and W-ward. [Doc. 1 ¶ 10]. Inmates had created a man-sized hole in the W-ward wall to reach this area, and would recover contraband there and then store the contraband in Shackelford's office. [*Id.* ¶¶ 10–12]. Neither W-ward nor offices in the plumbing department were renovated, and the visitor center remained unchanged

except for freshly painted walls. [Doc. 242 at 37]. A metal plate was placed over the hole used to access the area between W-ward and the visitors center, but that plate was removed during defense counsel's visit. [Doc. 209 at 45 n.9]. Kirkman still fails to explain what specific evidence helpful to his case was destroyed or altered by Prison renovations. The Court declines to find prejudice on Kirkman's naked assertions. Accordingly, drastic sanctions are unwarranted.

*f. The Government's late discovery disclosures do not warrant sanctions.*

The Magistrate comprehensively reviewed Kirkman's allegations that the Government had violated Rule 16 fifteen times by failing to provide timely discovery. [Doc. 209 at 48–78]. Kirkman's objections largely reassert that the Government acted in bad faith meaning suppression or dismissal is warranted. The Court remains unconvinced.

Like with the other alleged Rule 16 violations, the Court declines to find that Mr. Sistla acted in bad faith in failing to timely produce discovery. At times, the Government provided some, but not all, of the requested discovery. [Doc. 178 at 38]. At other times, the prosecutor attributes tardy disclosure to his father entering hospice care. [Doc. 209 at 74]. While Mr. Sistla's actions are not excused, the record hardly evidences bad faith. Kirkman does not argue that the Magistrate erred in finding the late disclosures did not prejudice Kirkman. Even if some prejudice resulted, Kirkman does not convincingly explain why the harshest sanctions of

suppression or dismissal of the indictment are warranted. Accordingly, the Court declines to award the requested sanctions.

### g. *Preindictment delay did not violate Kirkman's Sixth Amendment rights.*

The magistrate analyzed and ultimately rejected Kirkman's claim that the government's delayed indictment for an impermissible amount of time [Doc. 209 at 85–90]. Kirkman objects, attacking several of the factual reasons the Magistrate concluded that the Government did not deliberately delay indictment for a tactical advantage. Kirkman says the Government interviewed Witness 2 in 2019 and demonstrates no reason why a second interview could not occur until 2021. [Doc. 225 at 55]. Kirkman says the COVID-19 pandemic did not prevent the interview since the Government conducted other interviews in August of 2020. [*Id.* at 56]. Kirkman further argues the transfer of inmates to other facilities occurred towards the end of the preindictment period, and the Government had no knowledge of these transfers until 2024. [*Id.*]. Ultimately, Kirkman says the lack of compelling excuses for the delay and certain statements made during Kirkman's bond hearing demonstrate the Government "deliberately and improperly sought to leverage Mr. Kirkman's extended [preindictment] detention to force him into cooperation, to its tactical advantage." [*Id.* at 57].

Despite statute of limitations providing the primary protection against preindictment delay, the Due Process Clause of the Fifth Amendment has "a limited

role to play in protecting against oppressive delay." *United States v. Lovasco*, 431 U.S. 783, 789 (1977). To justify dismissal of an indictment filed within the statute of limitations, a criminal defendant must show (1) that the delay actually prejudiced his defense; and (2) that the delay resulted from a deliberate design by the government to gain a tactical advantage over him. *United States v. Farias*, 836 F.3d 1315, 1325 (11th Cir. 2016) (quotations omitted). "The defendant bears a heavy burden in showing a dismissal is appropriate." *United States v. Foxman*, 87 F.3d 1220, 1222 (11th Cir. 1996).

The Court does not find the Government sought to leverage Kirkman's preindictment detention to force his cooperation, a scheme which would lengthen the preindictment period. At the bond hearing, Mr. Sistla stated the following:

> But what I told [Defense Counsel] is that I would…the Government may have been able to approach this from a different position had there been some indication that Mr. Kirkman was moving towards some sort of resolution. The case has been pending for about seven months, and in the Government's view, that some indication of cooperation or willingness to proffer or move the case forward . . .

[Doc. 74 at 29]. While Kirkman seizes on this quote as evidence of an improper *quid pro quo* motive, the full context demonstrates Mr. Sistla was suggesting some cooperation would lessen the Government's concern Kirkman was a flight risk. Mr. Sistla had just contended that Kirkman faced a longer sentence than he had previously faced, and continued to say "in cases where there's some indication of cooperation or proffer, the chances of flight are less – are of less concern for the

Government. [*Id.* at 28, 30]. Additionally, the Government plausibly argues Witness 2 had been released from custody and obtained counsel, meaning it took the Government some time to negotiate a second interview that occurred in 2021. [Doc. 242 at 60]. The Court does not doubt that portions of the Government's investigation continued into 2021 and faced significant hardships due to the COVID-19 pandemic, meaning any delay is not the product of the government's deliberate design to gain a tactical advantage. *See Lovasco*, 431 U.S. at 795 ("[I]nvestigative delay is fundamentally unlike delay undertaken by the Government solely 'to gain tactical advantage over the accused[.]'")

Accordingly, the Court does not find preindictment delay violated Kirkman's Due Process Clause rights and adopts the Magistrate's conclusions to the same effect.

### h. *Kirkman has not established a constitutional speedy trial violation.*

Kirkman also moves to dismiss the indictment on constitutional speedy trial grounds. The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. Const. Amend. VI. To determine whether a defendant's constitutional right to a speedy trial has been violated, courts use a four-factor test derived from *Barker v. Wingo*[4] weighing (1) the length of the delay, (2) the government's reasons for the delay, (3) the

---

[4] 407 U.S. 514, 530 (1972).

defendant's assertion of his right to a speedy trial, and (4) the prejudice to the defendant. *See United States v. Oliva*, 909 F.3d 1292, 1298 (11th Cir. 2018); *United States v. Dunn*, 345 F.3d 1285, 1296 (11th Cir. 2003). If the first three factors "weigh heavily against" the government, the defendant need not show actual prejudice, but if he cannot, dismissal is inappropriate. *United States v. Ingram*, 446 F.3d 1332, 1336 (11th Cir. 2006). But, "courts should not lightly dispense with the actual prejudice requirement because to do so necessarily results in the severe remedy of dismissal of the indictment." *United States v. Vargas*, 97 F.4th 1277, 1287 (11th Cir. 2024). The Court has reviewed the factors and determined that Kirkman has failed to establish a speedy trial violation.

### 1. Length of the Delay

The first factor of the speedy trial balancing test—the length of the delay— serves as a two-part inquiry. *United States v. Villarreal*, 613 F.3d 1344, 1350 (11th Cir. 2010) (citing *Doggett v. United States*, 505 U.S. 647, 651 (1992)). First, Kirkman must make a threshold showing of delay that necessitates balancing of the remaining factors. *Id.*; *see also Barker v. Wingo*, 407 U.S. 514, 530 (1972) (describing the length of delay as a "triggering mechanism" and noting "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors . . . "), Second, courts must examine how long the delay stretches beyond the threshold showing of delay, since increasing delays may give

rise to a strong presumption of prejudice in the fourth *Barker* factor. *Villarreal*, 613 F.3d at 1350. Delay is measured from the time the Sixth Amendment speedy trial right attaches, which is the time of indictment. *Id.*

As a threshold matter, Kirkman's trial has been delayed long enough to trigger a constitutional speedy trial analysis. Kirkman was indicted on November 16, 2021. [Doc. 1]. Kirkman's Motion formally requesting relief under the Sixth Amendment's speedy trial clause was filed on January 17, 2024—just over twenty-six months later. The time between indictment and trial continues to grow, with three years now having passed. This length of time is plainly sufficient to warrant consideration of the remaining factors. *See United States v. Ingram*, 446 F.3d 1332, 1337 (11th Cir. 2006) (finding two-year delay between indictment and trial requires court to continue with the *Barker* test).

Relating to the second part of the length of time inquiry, Kirkman argues in his objections that the post-indictment delay Kirkman has now experienced weighs heavily against the Government and resembles delays the Eleventh Circuit has called "extraordinary." [Doc. 225 at 59–60 (quoting *United States v. Register*, 182 F.3d 820, 827 (11th Cir. 1999))]. While the delay weighs against the government, the delay cannot weigh *heavily* against the Government "unless the reason for the delay also weighs against the Government." *United States v. Stapleton*, 39 F.4th 1320, 1327 (11th Cir. 2022) (citing *United States v. Oliva*, 909 F.3d 1292, 1302 (11th Cir.

2018)). Because the Court continues to find Kirkman and the Government share blame for delaying trial, the Court declines to weigh the length of delay heavily against the government.

Kirkman also objects to the Magistrate's conclusion that *preindictment* delay was not inordinate and could not be weighed against the government. Kirkman tries to portray this case as a simple case with a simple investigation, meaning the Government should have indicted Kirkman much sooner. Kirkman wants the preindictment delay to be considered with the postindictment delay so that the total delay is found to weigh heavily against the Government. The Court finds no merit in Kirkman's contentions.

Once a speedy trial analysis is triggered, pre-indictment delay may be considered to help determine how heavily post-indictment delay weighs against the Government. *United States v. Ingram*, 446 F.3d 1332, 1339 (11th Cir. 2006). "Pre-indictment delay is accounted for if it is 'inordinate.'" *United States v. Oliva*, 909 F.3d 1292, 1304 (11th Cir. 2018). Delay in ordinary street crime cases is less tolerable than complex conspiracy charges. *Id.* In *Olivia*, the Eleventh Circuit held a two-year preindictment delay was not inordinate where the investigation of a criminal conspiracy involved twenty-five witnesses in numerous states, nine suspects, one hundred exhibits, several search warrants, and other investigatory materials. *Id.* at 1305. By contrast, in *Ingram*, the Eleventh Circuit held a two-year

pre-indictment delay was inordinate where an agent's investigative report had been "misplaced" and involved a simple charge of making false statements during purchase of a firearm. *Ingram*, 446 F.3d at 1335, 1339.

Despite Kirkman's arguments to the contrary, the Court declines to find the pre-indictment delay—from roughly February 2019 until November 2021—inordinate. Like in the Due Process context, the Court does not believe investigative delay should weigh heavily against the Government, and the Government points to documents and interviews that were not obtained until 2020 and 2021. [Doc. 242 at 63]. Furthermore, the Court does not find this case as simple and susceptible to a short pre-indictment period as Kirkman contends. This case involves a conspiracy to smuggle drugs into a secure facility, distribute those drugs to inmates, and provide kickbacks to an assisting member of prison security. Kirkman repeatedly described the discovery as "voluminous," belying Kirkman's portrayal of this case as simple. Here, the pre-indictment delay was not inordinate and does not factor heavily into the Court's consideration of post-indictment delay, which the Court ultimately does not weigh heavily against the Government.

## 2. Reasons for the Delay

Kirkman makes two factual arguments to show the Magistrate erred in not attributing blame for this case's postindictment delays to the Government. First, Kirkman points out that all his motions seeking extensions of time to file pretrial

motions said "discovery is still ongoing," meaning these extensions—requested throughout 2022—were really caused by the Government's conduct. [Doc. 225 at 63]. Second, Kirkman says delays following this period were caused by the Government's alleged Rule 16 violations, which "needlessly fostered extensive litigation." [*Id.* at 64 (quoting the R&R)]. Upon review, the Court attributes relatively little of the delay to the Government.

Much of the delays in 2022 are not attributable to the Government. Indicted in November 2021, Kirkman obtained counsel and his attorneys Ms. Westmoreland and Mr. Harvey entered appearances on Kirkman's behalf in January 2022 and February 2022, respectively. In the following months, Kirkman then requested a series continuance of the pretrial conference and extensions of time to file pretrial motions. [Doc. 34, 41, 54, 62]. These motions cited the same reason for the requested extension:

> Discovery is still ongoing, and the discovery so far received is voluminous. Defense counsel needs additional time to receive discovery, review discovery, prepare any pre-trial motions, and for the parties to have the opportunity to discuss resolving this matter short of trial.

These requests culminated in (1) a continuance of the pretrial conference until November 16, 2022; and (2) a deadline to file pretrial motions by November 14, 2022. On this record, the Court does not conclude the Government's failure to provide certain discovery substantially caused the delay throughout 2022. Ongoing discovery may have been a factor in Kirkman requesting extensions, but the

motions' make clear review of the voluminous discovery and preparation of pretrial motions played a similarly substantial role. Not until December 5, 2022, did Kirkman begin to blame the Government by directly citing the Government's unfulfilled discovery obligations as a reason for an extension of time to file pretrial motions. [Doc. 76]. Therefore, the Court does not weigh any delay from Kirkman's indictment until December 2022 heavily against the Government.[5]

Similarly, this Court doubts delay from December 2022 onward is the result of the Government's conduct. The Government has created needless litigation that has continued until the current Order, but this matter proceeded parallel to other pretrial matters that prevented trial before their resolution. In August 2022, Kirkman joined in co-defendant Shackelford's Motion for a Bill of Particulars, Motion to Dismiss Count Two for Duplicity, Motion to Dismiss for Multiplicity, and Motion for Names of Unindicted Coconspirators. [Doc. 63, 64, 65, 66]. In December 2022, Kirkman joined co-defendant Arms's Motion to Suppress. [Doc. 75]. In January 2023, Kirkman also joined Shackelford's Motion for Appointment of a New Prosecution Team to Handle Defense Discovery Requests. [Doc. 86]. After a hearing and post-hearing briefing, the Magistrate entered an R&R regarding many these

---

[5] Any delay through April 30, 2022, would similarly not be weighed heavily against the Government, since this Court's Chief Judge Timothy C. Batten, Sr., had entered a COVID-19 related standing order stating "all large, multi-defendant trials are suspended in all divisions of the Northern District of Georgia through and including April 30, 2022." [Doc. 39 at 2].

motions on November 17, 2023.[6] [Doc. 158]. Kirkman sought and received an extension of time to file objections to the R&R, and timely filed those objections on December 22, 2023. [Doc. 163, 171]. This Court adopted the R&R over Kirkman and Shackelford's objections on July 22, 2024. Adjudication of these matters prevented a trial before the end of July 2024, independently of the Rule 16 and speedy trial litigation, and delays caused by pretrial motions do not weigh heavily against the Government. *See United States v. Schlei*, 122 F.3d 944, 987 (11th Cir. 1997) (holding delay caused by one hundred pretrial motions did not weigh heavily against government); *United States v. Twitty*, 107 F.3d 1482, 1490 (11th Cir. 1997) (holding delay caused by numerous pretrial motions, the illness of an essential government witness, substitution of counsel, and scheduling conflicts did not support finding violation of Sixth Amendment).

Kirkman further argues the Magistrate did not faithfully apply Eleventh Circuit precedent that provides "[g]overnment actions that are tangential, frivolous, dilatory, or taken in bad faith weigh heavily in favor of a finding that a speedy trial violation occurred." [Doc. 225 at 61 (quoting *United States v. Bibb*, 194 F. App'x 619, 622 (11th Cir. 2006))]. Kirkman says the Magistrate found the Government to

---

[6] The Magistrate previously granted the Motion to Appoint a New Prosecution Team to Handle Defense Discovery on March 16, 2023.

be "dilatory," meaning any delay should be weighed heavily against the government. [*Id.*]. Kirkman's argument lacks merit.

In this context, "dilatory" requires an intent to delay. *See United States v. Oliva*, 909 F.3d 1292, 1303 (11th Cir. 2018) ("[Appellants] contend that the term 'dilatory' does not require intent, and so it covers the Government's negligence. We disagree."). While the Magistrate and this Court have described the Government's conduct as dilatory, both the Magistrate and this Court have found the Government's delay to be negligent, rather than an intentional product of bad faith. *See supra* Section III.c. Negligence can be weighed heavily against the Government, but this Court has already declined to attribute much of delay to the Government's conduct. *Olivia*, 909 F.3d at 1303. Therefore, Kirkman's reliance on *Bibb* is misplaced.

Ultimately, the Court concludes the Government's delays in providing discovery were not the dominant reasons for delay of Kirkman's trial. The Court declines to weigh this factor heavily against the Government, which also means the length of delay factor cannot weigh heavily against the Government.

### 3.  Kirkman's Assertion of the Right to a Speedy Trial

A defendant's timely assertion of the right to a speedy trial "often supports an inference that the defendant was not at fault for the delay and that the delay prejudiced the defendant." *United States v. Villarreal*, 613 F.3d 1344, 1353–54 (11th Cir. 2010). The Magistrate found this factor did not weigh heavily against the

Government for four main reasons, recounting (1) Kirkman's various requests for extensions of time throughout 2022 and 2023; (2) Kirkman's failure to affirmatively assert a speedy trial violation until January 2024; (3) Kirkman's pretrial litigation; and (4) Defense Counsel's representation of a different defendant in a complex RICO case throughout much of 2023. [Doc. 209 at 105]. In response, Kirkman largely repackages arguments made to the Magistrate. Kirkman says (1) the Magistrate should have considered Kirkman's pretrial incarceration as an implied assertion of the speedy trial right; (2) the Magistrate misinterpreted Kirkman's pretrial motions; (3) Kirkman asserted his speedy trial right earlier than January 2024; and (4) the Magistrate should not have held defense counsel's representation of other clients against Kirkman. [Doc. 225 at 65–69]. Upon review, the Court finds no error in the Magistrate's conclusions.

The Magistrate properly considered and rejected Kirkman's reliance on a District of Columbia Court of Appeals case which held "when a defendant is incarcerated pending trial, the government must assume that he wants a speedy trial unless he asserts otherwise . . . ." *Strickland v. United States*, 389 A.2d 1325, 1330–31 (D.C. 1978). Kirkman cites no case law suggesting the Eleventh Circuit has adopted this analysis. Additionally, Kirkman fails to account for the District of Columbia Court of Appeals's later qualification we "reject any suggestion that the non-waiver presumed from a defendant's incarceration should be weighed as heavily

31

as an actual demand for a speedy trial." *Graves v. United States*, 490 A.2d 1086, 1098–99 (D.C. 1984).[7] The Supreme Court provided a flexible analysis for this factor, allowing a court "to weigh the frequency and force of the objections as opposed to attaching significant weight to a purely *pro forma* objection*." Barker v. Wingo*, 407 U.S. 514, 529 (1972). The Court continues to analyze Kirkman's assertion of his speedy trial right according to binding precedent, rather than out-of-context persuasive precedent.

The Magistrate did not meaningfully misinterpret Kirkman's pretrial motions when concluding those motions did not evince an intent to proceed to trial. As this Court has already concluded, Kirkman bears some responsibility for the delay in 2022, since Kirkman requested multiple extensions of time to file pretrial motions. And this Court has already concluded Kirkman's various pretrial motions, which were not adjudicated until 2024, prevented trial of this case. On this record, the Court cannot find Kirkman "aggressively sought to exercise his right to a speedy trial." *United States v. Register*, 182 F.3d 820, 828 (11th Cir. 1999).

---

[7] Although the Court declines to find Defendant's citation to *Strickland* persuasive, the Court is disappointed in the Government's erroneous representation that *Jones v. United States* overturned *Strickland* via an en banc panel. *See Jones v. United States*, 456 A.2d 805 (D.C. 1983). This is a plain misstatement by the Government. The *Jones* case cited by the Government is a per curium order that states "appellant's petition for rehearing en banc is denied." *Id.* The Government cites from one judge's reasons for denying a rehearing en banc, in which the judge argues *Strickland* was erroneous. As a separate statement by a different judge says: "In my view, had the full court desired to overrule three of its prior opinions, it would have voted to grant the petition in the case." *Id.* at 807. Although there was little merit to Defendant's citation to *Strickland* to begin with, the Government must do better when making representations regarding the law to the Court.

Finally, the Magistrate did not err in considering defense counsel's representation of a defendant in a complex state RICO case, which was at trial for all of 2023, and much of 2024. *See State of Georgia v. Quamarvious Nichols*, Fulton Co. Sup. Ct. Case No. 22SC183572. Defense counsel's participation in this trial makes Kirkman's assertion of his speedy trial rights resemble empty "pro forma" objections, which the Court needn't weigh heavily in the speedy trial analysis. Had this case been ready for trial, the Court finds it almost certain defense counsel would have requested continuances. Defense counsel did just that in another criminal case pending in this district. *See United States v. Ismael Guerrero-Moya*, No. 1:20-cr-00196-LMM-JSA-1 (N.D. Ga.). There, several motions filed in 2023 and 2024 requested continuances and provided the following reason, or a similar statement, for the request:

> Undersigned is lead counsel for the Defendant in *State of Georgia v. Quamarvious Nichols*, Case No. 22SC183572, which commenced trial on January 4, 2023, before Chief Judge Glanville in the Fulton County Superior Court. This is a RICO case with multiple defendants. The trial is anticipated to last several additional months.

[1:20-cr-00196-LMM-JSA-1; Doc. 340, 375, 400, 413]. The Magistrate did not err by not ignoring defense counsel's other obligations. Instead, the Magistrate utilized its common sense to conclude that any assertions of Kirkman's right to a speedy trial lacked force considering defense counsel's demonstrated inability to proceed to trial in other pending federal cases. Therefore, although Kirkman began invoking his

right to a speedy trial in 2023, the Court does not weigh this factor heavily against the government.

### 4.  Prejudice to the Defendant

Because the first three *Barker* factors do not weigh heavily against the Government, Kirkman must demonstrate actual prejudice to prevail on a speedy trial claim. *Villarreal*, 613 F.3d at 1355. Prejudice must be assessed in light of the three interests a speedy trial right was meant to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Id.* (quoting *Barker v. Wingo*, 407 U.S. 514, 532 (1972)). The most serious consideration is the last, because a defendant's inability to prepare his case "skews the fairness of the entire system." *Id.*

Beginning with the last interest protected by the speedy trial right, Kirkman has not shown that his defense will be impaired. Kirkman never tells the Court how his defense has been prejudiced by the Government's alleged delay in bringing Kirkman to trial. [Doc. 178 at 66–68 (Kirkman's Motion)]; [Doc. 225 at 69–71 (Objections to R&R)]. Kirkman cites his *ex parte* allegations of prejudice, but the Court declines to consider that evidence without allowing the government to hear and respond to that evidence. Regarding Rule 16 violations, Kirkman previously argued witnesses' memories would be impaired and that the crime scene had been

altered. Kirkman does not tell the Court whose memory has faded or how that imperfect memory harms Kirkman, meaning this conclusory allegation is insufficient to establish actual prejudice. *United States v. Young*, 906 F.2d 615, 620 (11th Cir. 1990) (finding conclusory allegations don't support actual prejudice showing); *United States v. Russo*, 796 F.2d 1443, 1451 (11th Cir. 1986) ("[Defendant] presents only general allegations of prejudice in the form of lost witnesses and evidence. Such general allegations are not sufficient to constitute proof of substantial prejudice."). As to the altered crime scene, this Court has already determined that the material locations described in the indictment were not changed and no harm to Kirkman resulted. *See supra* Section III.e. Ultimately, Kirkman barely alleges, much less demonstrates, that his defense will be impaired due to the delay in this case.

As for Kirkman's allegation he suffered stress and anxiety as a result of delays in this case, the Court finds those claims implausible and unsupportive of his requested relief. For criminal defendants, anxiety is "present to some degree in virtually every case . . . ." *United States v. Avalos*, 541 F.2d 1100, 1115 (5th Cir. 1976); *see also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (adopting decisions of the Fifth Court dated September 30, 1981, and earlier as binding precedent in the newly created Eleventh Circuit). To the extent Kirkman cites anxiety resulting from circumstances unique to this case, such as Kirkman

"knowing that [his] lawyers could not inspect the physical evidence nor the crime scene," the Court finds no factual support that Kirkman suffered anxiety owing to those delays. Kirkman may make "hail mary" claims of anxiety, but the Court is not required to credit implausible allegations.

Similar to Kirkman's allegations of stress and anxiety, Kirkman has done nothing to show his pretrial incarceration was of the type which does not normally attend a criminal prosecution. Where the Court has already declined to attribute much, if any, of the blame for the delay to the Government, the Court declines to find detention at a pretrial detention center prejudices Kirkman. Magistrate Judge Russell G. Vineyard found adequate justification for Kirkman's continued pretrial detention in March 2023, writing:

> Defendant has been ordered to be detained pending trial because clear and convincing evidence supports finding that he poses a danger to the community, and the length of his detention does not violate due process under the particular circumstances of this case as it is a relatively small fraction of the potential sentence [defendant] faces if convicted on the charges in the indictment.

[Doc. 116]. The Court does not find Kirkman's pretrial detention warrants relief.

Ultimately, the Court has found no *Barker* factor weighs heavily against the Government, and Kirkman has not made a sufficient showing of actual prejudice. Therefore, the Court denies Kirkman's requested relief for violation of his constitutional speedy trial right.

## IV.    CONCLUSION

For the foregoing reasons, the Court receives the R&R with approval and adopts its findings and legal conclusions as the Opinion of this Court. Accordingly, the Motion for Relief [Doc. 178] is **DENIED** for failure to state a claim.

**IT IS SO ORDERED**, this 17th day of December, 2024.


_____
WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE